UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

———————————

№ 07-CV-1720 (JFB)

———————————

JOSE VIGIL,

Petitioner,

VERSUS

ISRAEL RIVERA, SUPERINTENDENT,

Respondent.

———————————

MEMORANDUM AND ORDER
April 25, 2008

———————————

JOSEPH F. BIANCO, District Judge:

Jose Vigil (hereinafter, "Vigil" or "petitioner") petitions this Court for a writ of *habeas corpus*, pursuant to 28 U.S.C. § 2254, challenging his conviction in state court.

Petitioner was convicted in a judgment rendered on September 12, 2002, following a jury trial in the Supreme Court of Suffolk County. Petitioner was convicted of Criminal Possession of a Defaced Weapon in the Third Degree [N.Y. Penal Law § 265.02(3)] and Criminal Possession of a Loaded Weapon in the Third Degree (N.Y. Penal Law § 265.02(4)]. Petitioner was sentenced to a determinate sentence of five years for the defaced weapon count and an indeterminate sentence of three to six years on the loaded weapon charge, to run concurrently.

Petitioner challenges his conviction on the following grounds: (1) the trial court erred when it denied suppression of petitioner's statement to the police, which was taken in violation of his constitutional rights pursuant to *Miranda v. Arizona*, 384 U.S. 436 (1966); (2) the People failed to prove petitioner's guilt beyond a reasonable doubt; (3) petitioner was denied a fair trial due to the cumulative effect of the prosecutor's improper statements during summation; and (4) the sentence imposed by the court was harsh and excessive and should be modified in the interest of justice.

For the reasons stated below, petitioner's request for a writ of *habeas corpus* is denied

in its entirety on the merits. Specifically, the Court concludes that: (1) the trial court's determination of petitioner's *Miranda* claim was consistent with federal law and based on a reasonable determination of the facts in light of evidence presented; (2) there was sufficient evidence for a rational trier of fact, viewing the evidence presented at trial in the light most favorable to the prosecution, to find that the essential elements of the two offenses were established beyond a reasonable doubt; (3) the prosecution's summation did not cause the petitioner to suffer any actual prejudice that would have had an injurious effect or influence on the jury's verdict; and (4) petitioner's sentence was not unduly harsh or excessive in light of the proof at trial, the nature of petitioner's crimes, and the sentencing range prescribed by state law.

I. BACKGROUND

A. The Facts

The following facts are adduced from the instant petition and underlying record.

1. The Gun Incident

On May 13, 2001, between 10:00 and 11:00 a.m., members of the Schutzhund Club – a club formed for the training of dogs in tracking, obedience, and protection – concluded a meeting held at the Brentwood Soccer Field in Brentwood, Suffolk County, New York. (Tr. 402-05, 548.)[1] Mr. Jason Kirkham was a club member present at the meeting. (*Id.* 404.) Upon the meeting's conclusion, Mr. Kirkham and his peers returned to their parked cars in the Petland parking lot adjoining the Brentwood Soccer Fields, and prepared to leave. (*Id.* 402-107, 632-33.)

Upon pulling his car out of his parking spot, Mr. Kirkham hit a white Acura containing four or five young Hispanic males, knocking out the Acura's rear taillight. (*Id.* 407-09, 550, 633.) Mr. Kirkham exited his vehicle to speak with the occupants of the white Acura, and offered to pay for the damage done to the car. (*Id.* 409.) Fellow club members Garvin Hercules, Cliff Benjamin, and Richard Steed joined Mr. Kirkham at the scene of the accident. (*Id.* 409-18.) Upon the suggestion of Mr. Benjamin, Mr. Kirkham called the police. (*Id.* 410-11.)

Mr. Steed at this point noticed the white Acura's driver reach under the seat and hand petitioner a black revolver, which petitioner secured in the waistband of his pants. (*Id.* 553-56.) Mr. Hercules testified to a differing recollection; Mr. Hercules stated that the petitioner himself reached under the passenger seat and retrieved a revolver, placing it in his waistband. (*Id.* 636-38.) Mr. Steed and Mr. Hercules agreed that a second occupant of the Acura also possessed a gun. (*Id.* 555-57, 641.)

Mr. Hercules testified that the man he identified as the second occupant of the Acura carrying a gun started to walk off towards Brentwood Soccer Field. (*Id.* 643-45.) Mr. Hercules, who was accompanied by his dog Max, tried to speak to the man as the man walked toward the soccer field. (*Id.* 644-45.) The man Mr. Hercules identified as the second occupant then turned to Mr. Hercules and lifted his shirt, displaying the weapon placed in his waistband. (*Id.* 645.) Mr. Hercules proceeded to have Max attack the individual. (*Id.* 645-47.) Max subdued the

---

[1] "Tr." refers to the transcript of the trial proceedings in the underlying criminal action.

2

man, badly biting his left forearm. (*Id.* 647.) The suspect left the scene and was not arrested in connection with this incident. (*Id.* 688-89.)

Meanwhile, at least one of the remaining occupants of the white Acura, aside from the second occupant and the petitioner, drove through a group of onlookers in the Petland parking lot and left the scene. (*Id.* 417.) Petitioner was left behind in the parking lot. (*Id.*) Mr. Benjamin placed petitioner in a headlock. As Mr. Benjamin held petitioner, Mr. Steed approached petitioner and removed the revolver from petitioner's waistband. (*Id.* 418, 562-65, 650.) A brief struggle ensued, after which petitioner was forced to the ground and kept there under threat of attack by Max.[2] (*Id.* 562-64, 650-54.) Mr. Steed proceeded to open the revolver, discovering that it was loaded. (*Id.* 565.) Mr. Steed hit petitioner with the gun. (*Id.* 566.)

Mr. Kirkham called the police a second time to notify them that the incident now involved a gun. (*Id.* 420.) Police officer James Spadaro arrived at the Petland parking lot moments later to find petitioner lying face down on the ground with his arms out, surrounded by three or four males and a dog that appeared to be a German Shepherd. (*Id.* 423, 518.) A five shot Taurus revolver was resting on top of a black Honda. (*Id.* 519.) Officer Spadaro placed the revolver in the waistband of his pants and proceeded to handcuff petitioner. (*Id.* 518-20.)

Officer Spadaro radioed headquarters that he had the suspect under arrest, and upon arrival of his supervisor, unloaded the revolver, noting it held five live rounds of .38 caliber ammunition. (*Id.* 512-22.) Officer Spadaro also noted that the weapon had been defaced in the area where a serial number might have been located. (*Id.* 522-23.)

2. Petitioner's Statement at the Precinct

Petitioner was taken to the Third Precinct Detective Squad ("Third Squad"), where Detective A. Sciccotto ("Det. Sciccotto") was assigned to his case. (*Id.* 528-29.) Officer Spadaro transferred possession of the handgun and ammunition to Det. Sciccotto. (*Id.* 708.) Det. Sciccotto noted that the serial number had been grounded off the frame of the gun, and placed the gun and the ammunition in the Third Squad's evidence locker. (*Id.* 710.)

In the Third Squad, Det. Sciccotto sought a Spanish language translator to aid in communicating with petitioner. (*Id.* 726-28, 746-47.) No translator was available at the time so Det. Sciccotto refrained from interrogating petitioner and, instead, decided to ask only pedigree questions of petitioner. (*Id.* 46-47.) Det. Sciccotto asked petitioner pedigree questions in order to fill out the arrest worksheet. (*Id.* 713-18.) These questions inquired as to petitioner's name, residence address, and height. (*Id.*)

After Det. Sciccotto finished asking petitioner pedigree questions, Sgt./Det. John Twiname came to the doorway of the interview room and asked Det. Sciccotto whether the weapon recovered from the crime scene should be sent to the crime lab for latent fingerprint testing. (*Id.* 718.) Petitioner proceeded to make the statement: "I bought it from a guy on Route 111 for two hundred. I keep it in my house. I never take it out." (*Id.* 718-19.) Det. Sciccotto recorded petitioner's statement on the back of the arrest worksheet.

---

[2] Max and Mr. Hercules had returned to the Petland parking lot from the Brentwood Soccer Field in the interim. (Tr. 649.)

3

(*Id.* 719.) Neither Det. Sciccotto nor any other police enforcement officer informed petitioner of his *Miranda* rights prior to petitioner's statement in the Third Squad. (*Id.* 725.) Neither Det. Sciccotto nor Sgt./Det. Twiname questioned petitioner regarding the recovered weapon, or the events at the crime scene, prior to petitioner's statement in the Third Squad. (*Id.* 719.)

Charles Hopkins, a forensic firearms examiner, examined the gun procured from the scene of the arrest at the Suffolk County Crime Lab. (*Id.* 766.) Mr. Hopkins identified the make and type of gun and bullets he received from the police department's Identification Section. (*Id.* 768-69.) Mr. Hopkins noted that the serial number on the gun had been obliterated or defaced, and he was unsuccessful in his attempts to restore the serial number. (*Id.* 769.) Mr. Hopkins found both the gun and the bullets to be operable. (*Id.* 771.)

B. Procedural History

Petitioner was charged with two counts of Criminal Possession of a Weapon pursuant to Penal Law § 265.02: Criminal Possession of a Defaced Weapon (Third Degree) [N.Y. Penal Law § 265.02(3)] and Criminal Possession of a Loaded Weapon (Third Degree) [N.Y. Penal Law § 265.02(4)]. Petitioner pleaded not guilty. Petitioner was tried in the Supreme Court of the State of New York, Suffolk County.

On June 5, 2002, following a motion to suppress filed by petitioner, the Supreme Court of the State of New York, Suffolk County, held a pre-trial suppression hearing to determine whether the incriminating oral statement, allegedly spontaneously made by petitioner in the presence of police officers, was admissible as evidence at trial. Petitioner claimed the oral statement was provoked by express questioning or its functional equivalent and, as petitioner had not been informed of his rights pursuant to *Miranda*, the statement should be suppressed at trial. The hearing court determined that the statement was made spontaneously. Specifically, the court found that the statement was not in response to express questioning or its functional equivalent. Accordingly, the court held the statement was admissible as evidence at trial and petitioner's motion to suppress the statement was denied.

On June 26, 2002, following a trial, the jury found the petitioner guilty of Criminal Possession of a Defaced Weapon in the Third Degree [N.Y. Penal Law § 265.02(3)] and Criminal Possession of a Loaded Weapon in the Third Degree [N.Y. Penal Law § 265.02(4)]. On September 12, 2002, petitioner was sentenced to a determinate term of five years for the defaced weapon count and an indeterminate term of three to six years on the loaded weapon charge, with the sentences to run concurrently.

On or about July 29, 2005, petitioner timely appealed his conviction to the Appellate Division, Second Department, claiming: (1) the trial court erred when it denied suppression of petitioner's statement to the police, which was taken in violation of constitutional rights pursuant to *Miranda*; (2) petitioner was denied a fair trial due to the cumulative effect of the prosecutor's improper statements during summation; (3) the People failed to prove petitioner's guilt beyond a reasonable doubt; and (4) the sentence imposed by the court was harsh and excessive and should be modified in the interest of justice.

4

In a decision and order dated July 25, 2006, the Appellate Division, Second Department, affirmed petitioner's judgment of conviction, holding that: (1) the hearing court properly denied suppression of petitioner's statement as it was spontaneously made and not a product of questioning or its functional equivalent; (2) the prosecutor's summation did not deprive petitioner of a fair trial; (3) petitioner's guilt was established beyond a reasonable doubt and the verdict was not against the weight of the evidence; and (4) the sentence imposed was not excessive. *People v. Vigil*, 31 A.D.3d 794 (N.Y. App. Div. 2006).

On August 9, 2006, Vigil filed an application with the New York Court of Appeals for leave to appeal the Appellate Division's order. His application raised the same claims as those raised before the Appellate Division. On September 26, 2006, the Court of Appeals denied Vigil leave to appeal the decision. *People v. Vigil*, 7 N.Y.3d 852 (N.Y. 2006).

On April 23, 2007, petitioner filed a *pro se* petition in this Court for a writ of *habeas corpus*, pursuant to 28 U.S.C. § 2254, raising the four claims petitioner submitted on direct appeal.

## II. STANDARD OF REVIEW

To determine whether petitioner is entitled to a writ of habeas corpus, a federal court must apply the standard of review set forth in 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act ("AEDPA"), which provides, in relevant part:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2554. "Clearly established Federal law" is comprised of "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Green v. Travis*, 414 F.3d 288, 296 (2d Cir. 2005) (quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000)).

A decision is "contrary to" clearly established federal law, as determined by the Supreme Court, "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 413. A decision is an "unreasonable application" of clearly established federal law if a state court "identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of [a] prisoner's case." *Id.*

AEDPA establishes a deferential standard

of review: "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Gilchrist v. O'Keefe*, 260 F.3d 87, 93 (2d Cir. 2001) (quoting *Williams*, 529 U.S. at 411). The Second Circuit added that, while "[s]ome increment of incorrectness beyond error is required . . . the increment need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." *Gilchrist*, 260 F.3d at 93 (quoting *Francis S. v. Stone*, 221 F.3d 100, 111 (2d Cir. 2000)).

### III. DISCUSSION

#### A. The *Miranda* Claim

Petitioner argues that the state court erred by admitting his un-*Mirandized* statement, after determining that he was not under interrogation (or its functional equivalent) at the time he made the statement. As set forth below, the Court disagrees with petitioner and concludes that there is no basis for *habeas* relief on this claim.

#### 1. The Suppression Hearing

Petitioner's statement made at the Third Precinct was the subject of a suppression hearing held on June 5, 2002 prior to petitioner's trial in the Supreme Court of New York, Suffolk County. The evidence adduced at the hearing is summarized below.

After his arrest, petitioner was taken to a room in the Third Squad. (Supp. Hr'g 9.) Det. Sciccotto was assigned to petitioner's case. (*Id.* 20.) Upon discovering the petitioner spoke Spanish and only broken English (*id.*), Det. Sciccotto inquired whether an interpreter was available to assist him (*id.* 24). When his inquiry proved fruitless, Det. Sciccotto decided not commence interrogating petitioner until a translator became available. (*Id.* 30.) Det. Sciccotto instead asked petitioner pedigree questions to complete the arrest worksheet, including his address, name and height. (*Id.* 10-12.)

Sometime after completion of the pedigree questions for purposes of filling out the arrest worksheet (*id.* 15), Sgt./Det. John Twiname came to the door of the interview room and engaged in a dialogue with Det. Sciccotto (seated at a desk in the interview room at the time) (*id.* 12-13). Sgt./Det. Twiname asked Det. Sciccotto what was to be done with the gun that was recovered; namely, whether the gun would be sent to the crime lab to be checked for latent fingerprints. (*Id.* 13-14, 34-35.) At this time, petitioner stated, "I bought it from a guy on Route 111 for two hundred. I keep it in my house. I never take it out." (*Id.* 35.) Neither Det. Sciccotto nor Sgt./Det. Twiname had asked petitioner any questions regarding the gun prior to the time petitioner made this statement. (*Id.* 15, 35-36.) Det. Sciccotto proceeded to transcribe the statement onto the backside of the arrest worksheet. (*Id.* 14-15.) Petitioner was not read his *Miranda* rights prior to making this statement. (*Id.* 23.) Det. Sciccotto stated that he could not be sure petitioner would understand them in English, given petitioner only spoke broken English, and no officer was available to translate the reading of *Miranda* rights into Spanish for petitioner. (*Id.* 23-24.) Det. Sciccotto did not begin interrogating petitioner regarding the events leading to his arrest. (*Id.*)

Following the hearing, the Court denied petitioner's motion to suppress, determining that the statement was not improperly gathered in violation of petitioner's constitutional rights under *Miranda* because the statement was spontaneous and was not in response to express questioning or the functional equivalent thereof. The court, therefore, allowed the statement to be admitted into evidence during petitioner's trial.

2. Analysis

Under *Miranda*, the prosecution may not use statements obtained from criminal suspects as a result of custodial interrogation "unless [the prosecution] demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." *Miranda*, 384 U.S. at 444. *Miranda* warnings are implicated whenever an individual in custody is subject to either express questioning or its functional equivalent. *Rosa v. McCray*, 396 F.3d 210, 220-21 (2d Cir. 2005). For *Miranda* purposes, "interrogation" includes "any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Rhode Island v. Innis*, 446 U.S. 291, 301 (1980). However, as the Supreme Court emphasized in *Miranda,* "[a]ny statement given freely and voluntarily" is admissible, and "[v]olunteered statements of any kind are . . . not affected by our holding today." *Miranda*, 384 U.S. at 478.

For petitioner to prevail on his *Miranda* claim, petitioner must demonstrate that the trial court's denial of his motion to suppress his post-arrest statement was either (1) contrary to, or an unreasonable application of, clearly established federal law, or (2) was based on an unreasonable determination of the facts in light of the evidence presented. *See* 28 U.S.C. § 2254(d). As discussed in detail below, petitioner has failed to demonstrate any such error.

a. State Court's Determination of the Facts

The "ultimate issue of voluntariness [of a confession] is a legal question requiring independent federal determination." *Nelson v. Walker*, 121 F.3d 828, 833 (2d Cir. 1997) (citing *Arizona v. Fulminante*, 499 U.S. 279, 287 (1991)); *see also Nova v. Bartlett*, 211 F.3d 705, 707 (2d Cir. 2000); *Mincey v. Arizona*, 437 U.S. 385, 396 (1978) (holding that the Court is not bound by a state court's determination that a statement was voluntary; "[i]nstead, this Court is under a duty to make an independent evaluation of the record"). Factual questions underlying a legal determination are entitled to a presumption of correctness under 28 U.S.C. § 2254(d). *Nelson*, 121 F.3d at 833. Specifically, this Court is required to give deference to the state court's factual determinations, and petitioner bears the burden of rebutting those determinations by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Boyette v. Lefevre,* 246 F.3d 76, 88 (2d Cir. 2001) (holding that under the AEDPA, "'a determination of a factual issue made by a State court shall be presumed to be correct [and t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence") (quoting 28 U.S.C. § 2254(e)(1)). However, the Second Circuit has noted that "the statutory presumption refers to historical facts, that is, recitals of external events and the credibility of the witnesses narrating them." *Nelson,* 121 F.3d at 833 (citation and internal quotation

omitted). Thus, "[i]f the material facts were not adequately developed at the State court hearing or the District Court finds that the factual determination is not fairly supported by the record, the presumption of correctness is set aside." *Id.* (citation and internal quotation omitted).

When evaluating the voluntariness of a confession, no one factor is determinative; rather, the totality of the circumstances must be evaluated. *Green v. Scully*, 850 F.2d 894, 901 (2d Cir. 1988). The factors to be considered include (1) the characteristics of the accused, (2) the conditions of interrogation, and (3) the conduct of law enforcement officials. *Id.* at 901-02.

In the instant case, the state court made factual findings after extensive development of the material facts at a suppression hearing. Moreover, there is more than sufficient evidence to support the state court's determination that the petitioner's statement was voluntary and spontaneous and, thus, did not implicate *Miranda*. The testimony at the suppression hearing established that petitioner's statement was made voluntarily and spontaneously in the presence of Det. Sciccotto and Sgt./Det. Twiname, following a conversation between the officers regarding what was to be done with the gun retrieved from the arrest site. Neither Det. Sciccotto nor Sgt./Det. Twiname posed any question to petitioner regarding the events of the arrest, or made any statement to petitioner (or in his presence) that could reasonably be seen to have been intended to elicit a response from petitioner. Thus, neither Det. Sciccotto nor Sgt./Det. Twiname asked any question of petitioner, or made any statement, that could be reasonably interpreted to have commenced the interrogation of petitioner. (Tr. 718-19; Supp. Hr'g 12-15, 23-24, 34-36.)

Given the evidence submitted at the pre-trial suppression hearing, the state court's determination that petitioner's statements were voluntary and therefore did not implicate *Miranda* were not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

### b. State Court's Application of the Law

The Court also finds the state court's adjudication of this claim was neither contrary to, nor an unreasonable application of, clearly established federal law.

The trial court's decision was neither "substantially different" from the Supreme Court's decision in *Innis*, nor "objectively unreasonable" in light of this precedent. *See Williams*, 529 U.S. at 406-07. The statement petitioner contests here followed a short exchange between the two detectives discussing what was to be done with the gun recovered from the arrest site. (Supp. Hr'g 13-14, 34-35). The record fails to demonstrate that the detectives' conversation was "particularly evocative," or that the detectives should have known their dialogue was reasonably likely to elicit an incriminating response, *see Innis*, 446 U.S. at 303, or "to produce psychological pressures that w[ould] subject [petitioner] to the will of his examiner[s]." *United States v. Morales*, 834 F.2d 35, 38 (2d Cir. 1987).

In fact, the instant case is closely analogous to the factual circumstances in *Innis*, in which the Supreme Court found that the statement was spontaneous and did not implicate *Miranda*. Specifically, the defendant in *Innis* was arrested for robbery

with a sawed-off shotgun; the petitioner was unarmed at the time of his arrest. *Innis*, 446 U.S. at 293, 294. While in transit to the police station, the two arresting police officers had a brief conversation amongst themselves regarding the missing weapon, and what could have potentially become of it. *Id*. at 294, 303. In reference to a nearby school for handicapped children, one officer said to another, "[I]t would be too bad if [a] little [handicapped] . . . girl . . . pick[s] up the gun, maybe kill[s] herself." *Innis*, 446 U.S. at 295. The defendant at that point interrupted the officers' conversation and offered to show them the location of the gun. *Id*. The *Innis* Court ruled that the officer's conversation amongst themselves did not constitute interrogation or its functional equivalent for *Miranda* purposes because: (1) the conversation amounted to no more than a few off-hand remarks; (2) the content of the conversation was not particularly evocative; and (3) the officers did not have reason to have known their conversation was reasonably likely to elicit an incriminating response from the defendant. *Id*. at 302-03; *see also Arizona v. Mauro*, 481 U.S. 520 (1987) (holding that defendant was not subjected to interrogation or its functional equivalent where police tape-recorded conversation between defendant and wife that took place in their presence); *Wolfrath v. La Vallee,* 576 F.2d 965, 973 n.6 (2d Cir. 1978) ("[S]ince the statement which was litigated below was a gratuitously volunteered statement, *Miranda* itself is inapplicable, for spontaneous statements which are not the result of 'official interrogation' have never been subject to its strictures.") (citations omitted).

Thus, in the instant case, the state court's decision that petitioner's statement was not in response to interrogation or its functional equivalent is completely consistent with *Innis*. *See, e.g., United States v. Payne*, 954 F.2d 199, 201, 203 (4th Cir. 1992) (holding that Officer's statement to the petitioner that "[t]hey [the FBI] found a gun at your house" did not constitute interrogation or its functional equivalent for Miranda purposes because the statement "was not one that sought or required a response"); *Marshall v. Artus*, 9:04-CV-881 (GLS/VEB), Slip Op., 2007 WL 2406958, at *6 (N.D.N.Y. Aug. 21, 2007) (denying *Miranda* claim in *habeas* petition where the petitioner, while in custody and without *Miranda* warnings, asked the police officer about the charge and, in response to officer's answer, the petitioner volunteered an incriminating statement); *Vasquez v. Filion*, 210 F. Supp. 2d 194, 200 (E.D.N.Y. 2002) (denying *habeas* relief and holding that petitioner's *Miranda* rights were not violated because there was "no evidence that Officer Doyle should have known that informing petitioner of the charge against him was reasonably likely to elicit an incriminating response from the suspect").

In sum, after an extensive review of the record, the Court concludes that the trial court's determination of petitioner's *Miranda* claim was not contrary to, or an unreasonable application of, clearly established federal law, nor was it based on an unreasonable determination of the facts in light of the evidence presented. Accordingly, the *Miranda* claim does not provide a basis for *habeas* relief.

B. Insufficient Evidence Claim

Petitioner claims that he was deprived of a fair trial and due process because there was insufficient evidence to prove his guilt beyond a reasonable doubt. Specifically, petitioner argues that there was insufficient evidence to

9

support a finding of the specific elements of the charges. For the following reasons, this Court finds that there was sufficient evidence for a rational trier of fact, viewing the evidence in the light most favorable to the prosecution, to find petitioner guilty beyond a reasonable doubt of the charges for which he was convicted.

The law governing *habeas* relief from a state conviction based on insufficiency of evidence is well established. That is, a petitioner "bears a very heavy burden" when challenging the legal sufficiency of the evidence in a state criminal conviction. *Einaugler v. Supreme Court of the State of N.Y.*, 109 F.3d 836, 840 (2d Cir. 1997). As such, a "state criminal conviction will be upheld if, 'after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Vassell v. McGinnis*, No. 04 Civ. 0856 (JG), 2004 WL 3088666, at *5 (E.D.N.Y. Dec. 22, 2004) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *see also Ponnapula v. Spitzer*, 297 F.3d 172, 179 (2d Cir. 2002) ("[W]e review the evidence in the light most favorable to the State and the applicant is entitled to habeas corpus relief only if no rational trier of fact could find proof of guilt beyond a reasonable doubt based on the evidence adduced at trial."); *Policano v. Herbert*, 430 F.3d 82, 86 (2d Cir. 2005) ("'[I]n a challenge to a state criminal conviction brought under 28 U.S.C. § 2554[,] . . . the applicant is entitled to habeas corpus relief if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt.'") (quoting *Jackson*, 443 U.S. at 324.). Even when "faced with a record of historical facts that supports conflicting inferences, [this Court] must presume – even if it does not affirmatively appear in the record-that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Wheel v. Robinson*, 34 F.3d 60, 66 (2d Cir. 1994). Thus, "[a] habeas court will not grant relief on a sufficiency claim unless the record is 'so totally devoid of evidentiary support that a due process issue is raised.'" *Sanford v. Burge*, 334 F. Supp. 2d 289, 303 (E.D.N.Y. 2004) (quoting *Bossett v. Walker*, 41 F.3d 825, 830 (2d Cir. 1994)).

A person is guilty of Criminal Possession of a Weapon in the Third Degree when that person knowingly has in his or her possession a firearm which has been defaced for the purpose of concealment or prevention of the detection of a crime or misrepresenting the identity of such firearm. N.Y. Penal Law § 265.02(3). The firearm need not be loaded, but it must be operable. *See People v. Hilaire*, 705 N.Y.S.2d 382, 383 (N.Y. App. Div. 2000); *People v. Ansare*, 96 A.D.2d 96, 97 (N.Y. App. Div. 1983). A person knowingly possesses a firearm which had been defaced for the purpose of concealment or prevention of the detection of a crime or misrepresenting its identity when that person is aware that he or she is in the possession of such firearm which has been defaced for such purpose. *People v. Velasquez*, 528 N.Y.S.2d 502, 503 (N.Y. Sup. Ct. 1988); *see also People v. Sanchez*, 110 A.D.2d 665, 665 (N.Y. App. Div. 1985); *Ansare*, 96 A.D.2d at 97; *People v. Cohen*, 57 A.D.2d 790, 791 (N.Y. App. Ct. 1977). "The possession by any person of a defaced machine-gun, firearm, rifle, or shotgun is presumptive evidence that such person defaced the same." N.Y. Penal Law § 265.15(5); *see In re Gregory M.*, 585 N.Y.S.2d 193, 194 (N.Y. App. Div. 1992).

A person can also be guilty of Criminal Possession of a Weapon in the Third Degree when that person knowingly possesses any loaded firearm outside such person's home or place of business. N.Y. Penal Law § 265.02(4). A person knowingly possesses a loaded firearm when that person is aware that he or she is in possession of a loaded firearm. *See People v. Velasquez*, 528 N.Y.S.2d 502 (N.Y. Sup. Ct. 1988).

After a careful review of the record, the Court concludes that a rational trier of fact could have found that all the essential elements of the crimes of Criminal Possession of a Defaced Weapon in the Third Degree and Criminal Possession of a Loaded Weapon in the Third Degree were met. Specifically, petitioner's convictions were supported by the eyewitness testimonies of three individuals present at the scene of the arrest and during the events leading up to this arrest (Tr. 418, 562-65, 650), by petitioner's statement made in the presence of law enforcement officers after his arrest (*id.* 718-19), and by physical evidence consisting of the gun and bullets removed from the petitioner's possession by a testifying witness and taken into possession by Officer Spadaro upon his arrival at the scene of the events leading to petitioner's arrest (*id.* 418, 519, 562-65, 650). The evidence presented at trial was clearly sufficient for a rational jury to find petitioner guilty of the crimes.

In support of his insufficiency of the evidence claim, petitioner argues that the case rested solely on petitioner's statement made in the presence of Det. Sciccotto and Sgt./Det. Twiname while in custody, and that there was no corroboration showing petitioner's knowing possession of a loaded or defaced weapon. Petitioner contends that his statement should have been suppressed, and argues that no other evidence was presented at trial that would permit the jury to find the petitioner guilty beyond a reasonable doubt of the essential elements of the crimes charged. (Petition, at 17-18.) The Court finds this argument to be without merit.

As a threshold matter, as discussed *supra*, the evidence regarding his statement to police was properly admitted. Moreover, this Court concludes that a rational trier of fact could have found this statement to have been voluntary and truthful. In any event, the prosecution presented the jury with substantial evidence supporting petitioner's guilt of the crime beyond the petitioner's statement. Though discrepancy exists in eyewitness accounts of whether petitioner retrieved the weapon from under a seat of the car himself (*id.* 636-38), or whether another occupant of the car retrieved the weapon from under a seat of the car and handed it to petitioner, two eyewitnesses testified to watching petitioner place the weapon in his waistband (*id.* 553-56). Eyewitness testimony supported that Mr. Steed physically removed the firearm placed in petitioner's waistband (*id.* 418, 562-65, 650), and discovered the weapon was loaded (*id.* 565). Officer Spadaro's testimony corroborated that the firearm was loaded. (*Id.* 512-522) Expert testimony supported a conclusion that the weapon was defaced for the purpose of concealment or prevention of the detection of a crime or misrepresenting its identity. (*Id.* 769, 771.) Physical evidence of the firearm and the bullets found in it were presented to the trial jury. (*Id.* 527.) Eyewitness testimony supported that petitioner was not in his home or place of business at the time he possessed the firearm. (*Id.* 553-56, 636-38). Thus, there was overwhelming evidence supporting the jury's verdict on the charged crimes.

In sum, the Court finds that, viewing the evidence presented at trial in the light most favorable to the prosecution, a rational trier of fact could have found that the essential elements of the two offenses (Criminal Possession of a Defaced Weapon in the Third Degree [N.Y. Penal Law § 265.02(3)], and Criminal Possession of a Loaded Weapon in the Third Degree [N.Y. Penal Law § 265.02(4)]) were established beyond a reasonable doubt. Therefore, the Court finds that petitioner's claim of insufficient evidence in state court does not provide a basis for *habeas* relief.

### C. Prosecutorial Misconduct Claim

The petition also alleges that the prosecutor's closing statements were improper and denied petitioner his right to a fair trial. (Petition, at 12.) First, petitioner argues that, in the prosecutor's summation, the prosecutor improperly bolstered the credibility of her witnesses.[3] (*Id.* at 12.) Second, petitioner complains that, in summation, the prosecutor stated that if the jury found her witnesses to be credible, she had met her burden at trial.[4] Petitioner claims that such statement misstated the law to the jury, violating petitioner's right to a fair trial. (*Id.* at 13.) Finally, petitioner complains that the prosecutor improperly commented on defendant's pre-trial silence.[5]

As set forth below, there is no basis to conclude that any of the allegedly improper remarks by the prosecutor in the closing statement warrant *habeas* relief, especially when considered in the context of the entire trial and in response to counsel for petitioner's closing argument.

"A criminal conviction 'is not to be lightly overturned on the basis of a prosecutor's comments standing alone' in an otherwise fair proceeding." *Gonzalez v. Sullivan*, 934 F.2d 419, 424 (2d Cir. 1991) (quoting *United States v. Young*, 470 U.S. 1, 11 (1985)). "Remarks of the prosecutor in summation do not amount to a denial of due process unless they constitute 'egregious misconduct.'" *United States v. Shareef*, 190 F.3d 71, 78 (2d Cir. 1999) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 647 (1974)). For a claim of prosecutorial misconduct to

---

[3] Specifically, the prosecutor stated: "[A]nd so what I have given you are three witnesses who came before you and testified with nothing to gain by doing so, with no ax to grind against this person. Right? And they missed a day of work. Take that into consideration when you consider if they're credible witnesses." (Tr. 902.)

[4] The prosecutor stated: "If you believe the three eyewitnesses, then you believe that I have proven my case beyond a reasonable doubt. If you believe Charlie Hopkins, who testifies about the operability of the gun, the fact that it was capable of being fired or what kind of gun it was, then I've proven those elements to you beyond a reasonable doubt. If you believe Detective Ciccotto (sic) that the defendant does make a statement, as ridiculous as anybody might think it is, he does it, he says it, not as a result of a question put to him as all…but, again, if Detective Ciccotto (sic) was going to make up a statement, I submit that it would have been a lot better than the one that this defendant gave." (Tr. 934-35.)

[5] The prosecutor stated: "Was it temporary or for a lawful purpose? Well, my witness didn't talk about that. Or are we to believe Mr. Vigil was protecting everyone at the scene by putting the gun in his pants? There's been no evidence about that . . . And how come he never says that to Detective Ciccotto (sic), if that was, in fact, the case? How come he never told Detective Ciccotto (sic): Hey, hey, I did it for a lawful reason." (Tr. 924.)

suffice to establish a claim of constitutional error, "it is not enough that the prosecutors' remarks were undesirable or even universally condemned." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (citation and quotation marks omitted). "[N]ot every trial error or infirmity which might call for the application of supervisory powers correspondingly constitutes a 'failure to observe that fundamental fairness essential to the very concept of justice.'" *Donnelly*, 416 U.S. at 642 (quoting *Lisenba v. California*, 314 U.S. 219, 236 (1941)). The Court must then review such comments by a prosecutor narrowly to determine whether they "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden*, 477 U.S. at 181 (quoting *Donnelly*, 416 U.S. at 642).

To overcome this burden, petitioner must show that he "'suffered actual prejudice because the prosecutor's comments during [testimony and/or] summation had a substantial and injurious effect or influence in determining the jury's verdict.'" *Bentley v. Scully*, 41 F.3d 818, 824 (2d Cir. 1994) (quoting *Darden*, 477 U.S. at 181). Factors considered in determining such prejudice include "(1) the severity of the prosecutor's conduct; (2) what steps, if any, the trial court may have taken to remedy any prejudice; and (3) whether the conviction was certain absent the prejudicial conduct." *Id.*; *accord United States v. Thomas*, 377 F.3d 232, 245 (2d Cir. 2004).

In the instant case, the petitioner claims that the prosecution improperly bolstered her witnesses' credibility during summation. The Supreme Court has long recognized that "'[i]t is unprofessional conduct for the prosecutor to express his or her personal belief or opinion as to the truth or falsity of any testimony or evidence or the guilt of the defendant.'" *United States v. Young*, 470 U.S. 1, 8 (1985) (quoting ABA standards for Criminal Justice 3-5.8(b) (2d ed. 1980)); *accord United States v. Nersesian*, 824 F.2d 1294, 1328 (2d Cir. 1987). However, a reviewing court "must evaluate the challenged remarks in the context of the trial as a whole, for the government is allowed to respond to argument that impugns its integrity or the integrity of its case." *United States v. Rivera*, 22 F.3d 430, 438 (2d Cir. 1994).

Here, in her summation, the prosecutor did not improperly vouch for witnesses, but merely responded to defense counsel's arguments during his own summation, including defense counsel's own speculation on the credibility of the witnesses presented at trial. Specifically, in summation, defense counsel told the jury that the prosecution's witnesses were not being straight with them – namely, that they were either making it up or were just wrong. For example, in the summation, petitioner's counsel stated, "The same people that are being offered to you as proof of this man's guilt are the same people that are not being straight with you." (Tr. 879-80.) Petitioner's counsel further stated, "At what point do you say to yourself they can't all be right? That either they're making it up or they're wrong?" (*Id.* 871.) Petitioner's counsel also argued the following: "The one fact they all had down pat was this waistband, left hand, taken out by Mr. Steed. It was eerie. Now, that's the one thing they all got their story straight." (*Id.* 873.) Moreover, petitioner's counsel claimed in summation that the arresting officer's actions evidenced that the officer himself did not believe the truth of the witnesses' statements. For example, petitioner's counsel stated, "What did you do, Officer Spadaro, after discussing this matter with these folks?

13

Nothing. I didn't put out a bulletin of any sort, if that's what you're asking. So that's what he testified to . . . it is not reasonable to conclude that an officer, after being credibly informed that an armed individual wounded by a dog is feeling about that, they're just going to let him go." (*Id.* 878-79.) In her own summation, the prosecutor essentially responded to – and attempted to rebut – claims made by petitioner's counsel in summation that attempted to undermine the prosecution witnesses' testimony. Moreover, it was not improper bolstering by the prosecutor to suggest that the prosecution witnesses had no motive to lie.

Similarly, the prosecutor did not err in stating that the prosecution had established every element of each crime charged and, if the jurors found the prosecution witnesses credible, they should return a guilty verdict. There is certainly nothing improper in suggesting to the jury that your witnesses, if credited, established each of the essential elements of the crime.

Finally, with respect to the prosecutor's statement in summation that petitioner never told police he had the gun for a valid reason, there is no basis to conclude that this objectionable comment on petitioner's post-arrest silence warrants *habeas* relief, especially where the trial court immediately remedied the situation by instructing the jury that "the defendant has no obligation to speak either to the detective or to us and you may draw no inference from it." (*Id.* 925.) In other words, as discussed below, an analysis of all of the factors demonstrates that neither this comment, nor any of the other comments, individually or cumulatively provide a basis for *habeas* relief.

First, it cannot be said that the statements "infected the trial" in such a manner as to deny due process and cause the resulting conviction. The remarks made by the prosecutor in summation were not an egregious error. In *Donnelly*, the Supreme Court found that a prosecutor's remark, while unambiguously improper, was merely trial error, and that the "distinction between ordinary trial error of a prosecutor and that sort of egregious misconduct [that] amount[s] to a denial of constitutional due process" must be maintained. *Donnelly*, 416 U.S. at 647-48. Here, for the reasons stated above, the Court finds that the statements in the prosecutor's summation do not fall into the category of severe or egregious misconduct.

As to the second prong of the prejudice analysis, any potential prejudice from the prosecutor's comments during the summation was cured by jury instructions which reminded jurors, among other things, that the arguments and remarks of counsel are not evidence. In particular, in addition to the immediate curative instruction noted above, after the comment about the defendant's silence after arrest with respect to the purpose of the gun, the Court instructed the jury, among other things: (1) that no inference could be drawn from the simple asking of any question and only a question coupled with an answer can be considered evidence (Tr. 380); (2) that the defendant has no obligation to offer evidence in his defense, and if he elects not to, the jury may draw no inference from such election (Tr. 378), nor may the jury draw any inference from defendant's choice not to testify at trial (Tr. 963); (3) that the arguments of counsel, including the summations of counsel, are not evidence (Tr. 380, 942, 952); (4) that the jury must determine for themselves the truthfulness and accuracy of the testimony of each witness (Tr. 959); and

14

(5) that before the jury can find the defendant guilty of a crime, the prosecutor must prove beyond a reasonable doubt every element of the crime, and that this burden never shifts from the prosecutor to the defendant (Tr. 956).

Similarly, in *Gonzalez*, where the prosecutor remarked on community safety, the Second Circuit held that the remark was inappropriate, but concluded that the error had been remedied by the trial court's instructions to the jury. 934 F.2d at 424. As in *Gonzalez*, any impropriety regarding the statements here by the prosecutor in summation were not severe enough to equate with the "egregious conduct" referred to in *Donnelly*, and any potential threat to petitioner's constitutional rights was effectively neutralized by the instructions of the trial judge. *See, e.g., United States v. Rivera*, 971 F.2d 876, 885 (2d Cir. 1992) (finding that the trial court's instructions cured any prejudice arising from prosecutorial error).

Moreover, even if the Court were to accept petitioner's argument that all of the prosecutor's comments during trial that he complains about constituted misconduct, the proof of petitioner's guilt was overwhelming and, thus, the comments were harmless. As the Second Circuit has noted, "[o]ften, the existence of substantial prejudice turns upon the strength of the government's case: if proof of guilt is strong, then the prejudicial effect of the comments tends to be deemed insubstantial; if proof of guilt is weak, then improper statements are more likely to result in reversal." *United States v. Modica*, 663 F.2d 1173, 1181 (2d Cir. 1981); *see also Bentley v. Scully*, 41 F.3d 818, 824 (2d Cir. 1994) (holding that review of a *habeas corpus* challenge based upon prosecutorial misconduct includes consideration of "whether the conviction was certain absent the prejudicial conduct").

As noted *supra,* the evidence of guilt established by the prosecution in the case was overwhelming. The prosecution presented eyewitness testimony of the petitioner's possession of the gun at issue. (Tr. 418, 562-65, 650.) An expert witness testified as to the gun's defaced nature (*Id.* 769), and the gun and the bullets' operability (*Id.* 771). The arresting police officer testified as to the gun being loaded, and to the presence of both the gun and bullets at the time the arrest was made. (*Id.* 522.) Two law enforcement agents testified as to the incriminating statement voluntarily made by the petitioner revealing his purchase and continued ownership of the gun at issue. (*Id.* 718-19.)

Given the compelling evidence in the prosecution's case against petitioner, the Court finds that petitioner has failed to demonstrate "actual prejudice." *See Bentley*, 41 F.3d at 825 (finding harmless error and a failure to demonstrate a substantial or injurious effect where there was "compelling evidence in the prosecution's case . . . [and] the prosecutor's summation comments were both brief and isolated"); *see also Bradley v. Meachum*, 918 F.2d 338, 343 (2d Cir. 1990) ("The clear evidence of guilt demonstrates that [petitioner] was not . . . prejudiced by the prosecutor's improper . . . remarks.").

Therefore, in light of the evidence at trial, this Court finds that the prosecution's summation did not cause the petitioner to suffer any actual prejudice that would have had an injurious effect or influence on the jury's verdict. Accordingly, there is no basis for *habeas* relief based on the prosecutorial misconduct claim.

D. Excessive Sentence

Finally, petitioner claims that his two concurrent sentences, one of a determinate term of five years and the other of an indeterminate term of no more than six years and no less than three years, are harsh and excessive. As set forth below, the Court disagrees and finds no basis for *habeas* relief in connection with petitioner's sentence.

It is well settled that an excessive sentence claim may not be raised as grounds for *habeas corpus* relief if the sentence is within the range prescribed by state law. *White v. Keane*, 969 F.2d 1381, 1383 (2d Cir. 1992) ("No federal constitutional issue is presented where, as here, the sentence is within the range prescribed by state law."); *see also Stallings v. Woods*, No. 04 CV 4714 (RLM), 2006 WL 842380, at *22 (E.D.N.Y. Mar. 27, 2006) (denying excessive sentence claim on the merits, despite petitioner's failure to exhaust it, where petitioner's sentence fell within the range prescribed by state law).

Petitioner was convicted of two counts of Criminal Possession of a Weapon in the Third Degree, which carries a sentencing range with a minimum of one year and a maximum of seven years. N.Y. Penal Law §§ 70.00(2)(d), 70.00(3)(b). Petitioner was sentenced to concurrent sentences of a determinate term of five years and an indeterminate term of no more than six years and no less than three years. As petitioner's sentence falls within the range established by state law, petitioner's claim is not cognizable for federal *habeas corpus* review. In any event, even if it were cognizable, there is nothing unduly harsh or excessive under the Eighth Amendment about petitioner's sentence in light of the proof at trial and the nature of the crimes for which he was convicted. Accordingly, this ground for seeking *habeas* relief is denied.

In sum, after examining the merits of all of petitioner's claims, the Court concludes that the state court's decisions on his claims were not contrary to, nor an unreasonable application of, clearly established Supreme Court precedent, nor were they based on an unreasonable determination of the facts in light of the evidence presented in state court.

IV. CONCLUSION

For the foregoing reasons, petitioner has demonstrated no basis for relief under 28 U.S.C. § 2254. Accordingly, the instant habeas petition is denied. Because petitioner has failed to make a substantial showing of a denial of a constitutional right, no certificate of appealability shall issue. *See* 28 U.S.C. § 2253(c)(2).

The Clerk of the Court shall enter judgment accordingly and close this case.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Date: April 25, 2008
Central Islip, New York

\* \* \*

Petitioner appears *pro se*. The attorney for respondent is Guy Arcidiacono, Assistant District Attorney, Suffolk County District Attorney's Office, 200 Center Drive, Riverhead, NY 11901.